UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**CYNDI FISCHER,**

   Plaintiff,

v.                                                      No. 4:23-cv-01069-P

**ROBERT PHILLIPS, ET AL.,**

   Defendants.

## MEMORANDUM OPINION & ORDER

On October 20, 2023, Cyndi Fischer, individually, and on behalf of the Estate of Jesse Fischer, filed a complaint alleging Defendant Officer Robert Phillips ("Officer Phillips") and the City of Arlington ("the City") violated 42 U.S.C. § 1983 when Officer Phillips fatally shot Jesse Fischer ("Fischer"). ECF No. 1. In response, on August 21, 2025, Officer Phillips filed a motion to dismiss the § 1983 claim against himself because he is entitled to qualified immunity. ECF No. 23. That same day, the City filed a motion to dismiss the § 1983 *Monell* claim against it. ECF No. 25. Having considered the filings and for the reasons detailed below, the Court finds that the two Motions should be **GRANTED**.

## BACKGROUND

Plaintiff's claims against the City arise out of the shooting and subsequent death of Fischer. ECF No. 1. Plaintiff specifically alleges (1) Officer Phillips used excessive force against Fischer in violation of § 1983 and the Fourth Amendment; (2) the City violated § 1983 and the Fourth Amendment by failing to train Officer Phillips regarding use of deadly force and de-escalation techniques; and (3) Officer Phillips's conduct entitles Plaintiff to compensation under the Texas wrongful death and survival action statutes. ECF No. 1.

On October 20, 2021, Arlington Police Department Officers responded to a 9-1-1 call that reported seeing a man, later identified as Fischer, slumped over in his vehicle. ECF No. 1 at 4. Upon arrival at the

scene, the initial responding officer, Officer Powell, spoke to Fischer and asked him to open his car door to be checked out. ECF No. 1 at 4. Rather than open his door, Fischer turned on his car ignition. ECF No. 1 at 4. Officer Powell asked Fischer to turn off his car and, again, to open his door. ECF No. 1 at 4. Fischer inquired whether he was under arrest. ECF No. 1 at 4. Another responding officer replied, "turn off your car man" and "do not move your car." ECF No. 1 at 4. Upon that officer's request for Fischer to stay, Fischer began driving. *Id.* Fischer continued driving as the initial responding officer and Officer Phillips followed him in separate vehicles. *Id.* at 4–5.

A low-speed police chase ensued. *Id.* at 4–7. While driving slowly and stopping at stop signs, albeit past the line where vehicles are supposed to stop, dashboard camera footage catches Fischer swerving between lanes and striking a curb next to a sidewalk. ECF No. 23 at 6; Phillips Dash-Cam, 2:10–2:11; 2:23–2:30. During the chase, Fischer stopped at a red light and exchanged communication with Officer Phillips. ECF No. 1 at 5–6; ECF No. 23 at 6–7. Officer Phillips exited his patrol car and repeatedly told Fischer to not move, turn off the car, drop the keys, and exit the vehicle. ECF No 1 at 6; ECF No. 23 at 6; Phillips Body-Worn Camera ("BWC") 1:36–2:20. Officer Phillips warned, "This is not going to end well for you if you do not drop those keys." Phillips BWC 2:17–2:21. Fischer replied, "This is not going to end well for you either. I got a lot of stuff going on now." *Id.* at 2:21–2:24. Officer Phillips then asked, "You got a lot of stuff going on, what you got going on?" *Id.* at 2:24–2:26. Fischer's response is inaudible, but Officer Phillips responds by saying "Right now I've got to deal with you, so step out of the car; do it now." *Id.* at 2:26–2:33. At that point, Officer Phillips informed Fischer he was under arrest for evading and continued to command Fischer to step out of the vehicle. *Id.* at 2:33–2:48.

For much of this stop, Fisher held both hands out of his vehicle. Officer Phillips asked another officer, "Are you ready to move up? He has his hands out—keep your hands out . . . ." *Id.* at 2:56–2:29. As soon as Officer Phillips began approaching Fischer's vehicle, Fisher retreated, pulling both hands into his car. *Id.* at 3:00. At this point, Officer Phillips drew his weapon and repeated his commands to Fischer

2

to put his hands outside the car. *Id.* at 3:00–3:08. Fischer then stuck his left hand out of the driver's window and appeared to be clutching the vehicle's keys. *Id.* at 3:08. Seconds later, the light turned green, and Fischer drove away from the officers. Phillips Dash-Cam 4:20–4:25.

The low-speed chase resumed—continuing for almost two minutes before Fischer reached the end of the cul-de-sac. *Id.* at 4:20–6:07. During that time, Fischer stopped nearly a car's-length past stop signs—breaching the middle of the road at some points—and drove on both sides of the neighborhood roads, at one point nearly hitting the left-hand-side sidewalk. *Id.*

As Fischer neared the end of the cul-de-sac, he made a 270-degree turn, driving about five miles per hour. Powell Dash-Cam 7:20–7:30; ECF No. 1 at 7. At that point, Fischer's car faced three other cars: a parked silver sedan, Officer Powell's patrol vehicle, and Officer Phillips's patrol vehicle. Powell Dash-Cam 7:20–7:30. Officer Phillips exited his vehicle and drew his weapon. *Id.* At this point, Officer Phillips was positioned between Fischer's vehicle and Officer Powell's vehicle. *Id.* As Fischer approached, Officer Phillips said, "Don't you do it, don't you–" Phillips BWC 5:03–5:06. Fischer's vehicle continued towards Officer Phillips. Phillips BWC 5:06–5:07. Officer Phillips fired his weapon 6 times into Fischer's windshield. *Id.* At no point when driving in the cul-de-sac did Fischer stop his vehicle before Phillips fired his weapon. Powell Dash-Cam 7:20–7:30. After retreating, Officer Phillips stated "God d***, I thought he was about to f****** run me over." Phillips BWC 5:32-5:36. A few minutes later, Officer Powell tells Officer Phillips, "You did the right thing. He was coming right at me, alright?" *Id.* at 9:35-9:42.

## LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unlike a

3

"probability requirement," the plausibility standard instead demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint contains facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court is not bound to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79. To avoid dismissal, pleadings must show specific, well-pleaded facts rather than conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

A court ruling on a motion to dismiss "may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations and internal quotation marks omitted). Specifically, "where video recordings are included in the pleadings . . . the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video blatantly contradict[s] those allegations." *Anderson v. Estrada*, 140 F.4th 634, 642 (5th Cir. 2025) (citations and internal quotation marks omitted). If plaintiff references video evidence and includes screenshots from the video in its complaint, the Court may properly consider the video evidence. *Id.*

### B. Section 1983 and Qualified Immunity

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting *Maine v. Thiboutot*, 448

4

U.S. 1, 4 (1980)). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States, and the defendants were acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

   1. The *Monell* standard

To hold a city liable under § 1983, a plaintiff must show that "the municipality itself caused" the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)). Such constitutional violations may occur due to the municipality's official, promulgated policies; its pervasive customs or practices; its failure to train, supervise, or discipline employees; or decisions or acts by final municipal policymakers. *Monell*, 436 U.S. at 690–95. To state a *Monell* claim, a plaintiff must plead: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Thompson ex rel. Neveah T. v. Martinez*, 789 F. Supp. 3d 491, 529 (W.D. Tex. 2025) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2020)). If an official policy is not explicit, "widespread practice of city officials" can suffice if the practice is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* If no constitutional violation occurred, the plaintiff's *Monell* claim necessarily fails. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

A *Monell* claim predicated on a failure-to-train theory requires a plaintiff to show "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020). Such a claim must be brought against the municipality's final policymaker. *Harris*, 489 U.S. at 389. And "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." C*onnick v. Thompson*, 563 U.S. 51, 61 (2011).

5

To establish inadequate training procedures, "a plaintiff must allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010). "The inadequacy of training must be closely related to the injury." *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002).

Additionally, deliberate indifference is a stringent standard under § 1983. To show deliberate indifference, "[n]otice [to the municipality] of a pattern of similar violations is required." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (quotation marks omitted). "A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quotation marks omitted). Thus, the municipal employees' actions "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984); *cf. Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) (holding that twenty-seven prior incidents of excessive force over a three-year period were not sufficiently numerous to constitute a pattern). A narrow exception to the pattern of similar violations exists but "is generally reserved for those cases in which the government actor was provided *no training whatsoever*." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) (emphasis added).

2. Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation omitted). The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged constitute a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* at 232. In excessive force cases, the

6

second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right was clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (citation and internal quotation marks omitted). When confronted with a qualified immunity defense at the pleadings stage, the plaintiff carries the burden to identify facts which, if proven, defeats the claim of immunity. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation omitted).[1]

## C. Fourth Amendment

During a detention or arrest, the right to be free from the use of excessive force is governed by the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To state an excessive force claim, a plaintiff must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 487 (5th Cir. 2001) (citation omitted). The second and third elements collapse into a single objective-reasonableness inquiry, in which the court may consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quoting Graham, 490 U.S. at 396).

---

[1] Though this test appears to be straightforward, trying to make sense of its application or finding any consistency under Fifth Circuit precedent is often a difficult task for lowly trial court judges. *Compare Crane v. City of Arlington*, 50 F.4th 453, 458–60, 462 (5th Cir. 2022) (relying on extra-record sources such as The New York Times and The Guardian to find no qualified immunity for an officer's use of deadly force where suspect resisted arrest and drove over another officer with his vehicle) *with Ramirez v. Guadarrama*, 844 F. App'x 710, 712–17 (5th Cir. 2021) (holding that qualified immunity barred suit when officers found a suspect doused in gasoline, knew their tasers would ignite him, and quickly tased him, "causing him to burst into flames"). No wonder, even the appellate court describes this uneasy analysis as the "QI dance." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022).

Courts generally examine excessive force claims considering the "totality of the circumstances" to determine whether an officer's actions were objectively unreasonable. *Rockwell v. Brown*, 664 F.3d 985, 991–92 (5th Cir. 2011). When an officer uses deadly force, however, use of the "'objective reasonableness' balancing test is constrained." *Garza v. Briones,* 943 F.3d 740, 745 (5th Cir. 2019) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)). To that end, the use of deadly force violates the Fourth Amendment "unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)).

### D. Wrongful Death and Survival Actions

When a plaintiff asserts a § 1983 claim, any accompanying wrongful death and survival action claim are not standalone claims but are, rather, predicated on the success of the § 1983 claim. *See Rhyne v. Henderson Cnty.*, 973 F.2d 386, 391 (5th Cir. 1992). Survival actions and wrongful death claims brought pursuant to 42 U.S.C. § 1983 is determined by the law of the forum state. *Caine v. Hardy*, 943 F.2d 1406, 1410 (5th Cir. 1991); *Delesma v. City of Dallas*, 770 F.2d 1334, 1338 (5th Cir. 1985).

"A wrongful death claim derives wholly from the cause of action that the decedent could have asserted for personal injuries had he lived." *Delesma*, 770 F.2d at 1338. A survival action "preserve[s] for the decedent's estate the causes of action that [decedent] held while he lived." *Id.* Any defense that would have defeated a personal injury claim or defeated the preserved claim may successfully defend against the wrongful death and survival claims. *Id.* at 1338–39.

## ANALYSIS

Plaintiff fails to state a claim against the City under § 1983 and the state's wrongful death and survival statutes. Plaintiff also fails to state a claim against Officer Phillips under the same.

**A. Plaintiff fails to state a claim against the City.**

Plaintiff fails to state a *Monell* claim against the City under a failure-to-train theory. Accordingly, Plaintiff also fails to state a claim against the City under the state's wrongful death and survival statutes.

1. <u>Plaintiff fails to state a claim against the City under § 1983.</u>

Plaintiff's failure-to-train theory against the City rests upon Officer Phillip's imbalanced training—with Officer Phillips receiving far less training hours in de-escalation techniques compared his overall training. ECF No. 1 at 22–25 ("This means that in Defendant Phillips's career, Arlington only required that 0.04 percent of his training be completed on De-escalation Techniques."). Plaintiff thus contends that the failure at issue is the City's "fail[ure] to train Defendant Phillips not to use his firearm in those same situations when the use of deadly force was not necessary or justified," which resulted in excessive deadly force used on Fischer. *Id.* at 24.

The City claims that Plaintiff fails to adequately plead all three elements of the failure-to-train theory under *Monell*.[2] The City posits Plaintiff fails to allege an actual inadequate training policy adopted by the City or a pattern of similar incidents that gives rise to deliberate indifference. ECF No. 25 at 5–8. The City also contends that Fischer's constitutional rights were not violated and, thus, Plaintiff's *Monell* claim necessarily fails. *Id.* at 8–10.

Plaintiff fails to plead an inadequate training policy adopted by the City. Plaintiff does not identify an inadequate formal policy. Thus, for Plaintiff's *Monell* claim to survive, Plaintiff would need to plead a "persistent, widespread practice of city officials or employees . . . so common and well settled as to constitute a custom that fairly represents municipal policy." *Thompson ex rel. Neveah T.*, 789 F. Supp. 3d at 529. Plaintiff does not do so. Plaintiff instead rests her claim on Officer Phillips's training alone and argues that his training was deficient or inadequate. However, this is not sufficient to state a claim for failure to

---

[2] The City does not dispute that it is the final policy maker regarding training policies of the Arlington Police Department.

9

train. *Harris*, 489 U.S. at 390 (holding "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city"). Therefore, Plaintiff failed to plead an essential element of her *Monell* claim.

Moreover, Plaintiff also fails to plead deliberate indifference on behalf of the City. To establish deliberate indifference, Plaintiff must allege "[a] pattern of similar constitutional violations by untrained employees." *Pena*, 879 F.3d at 623 (internal citation omitted). Here, Plaintiff did not allege a pattern of similar events but instead relied solely on Officer Phillips disproportionate training to support her claim. However, the exception to the similar-pattern standard "is generally reserved for those cases in which the government actor was provided *no training whatsoever*." *Id.* at 624 (emphasis added). Here, Plaintiff concedes there was de-escalation training, just at a disproportionately low rate compared to other training Officer Phillips received. ECF No. 1 at 22–26. Because Plaintiff pleaded that Officer Phillips received training, the narrow exception to the similar-pattern standard does not apply. Thus, Plaintiff failed to plead deliberate indifference.

Since Plaintiff failed to plead at least two elements of her failure-to-train *Monell* claim, Plaintiff fails to state a claim against the City under § 1983. Therefore, Plaintiff's *Monell* claim against the City should be and hereby is **DISMISSED with prejudice.**

2. <u>Plaintiff fails to state a claim against the City under the state's wrongful death and survival statutes.</u>

When a plaintiff asserts a § 1983 claim, any accompanying wrongful death and survival action claim are not standalone claims but are, rather, predicated on the success of the § 1983 claim. *See Rhyne v. Henderson Cnty.*, 973 F.2d 386, 391 (5th Cir. 1992). In *Rhyne*, the plaintiff, decedent's mother, sought recovery under Texas's wrongful death and survival statutes for her and her son's injury caused by the state's alleged deprivation of her son's constitutionally secured liberty interests. *Id.* The United States Court of Appeals for the Fifth Circuit held that while the plaintiff, decedent's mother, *could* recover, plaintiff "was not entitled to go to the jury on the question of whether there was

10

a constitutional violation" because she failed to plead an inadequate training policy and deliberate indifference. *Id.* at 393–394. Thus, there must be viable a § 1983 claim to state a claim under the state's wrongful death or survival statutes.

Here, as stated above, Plaintiff failed to plead at least two elements of her § 1983 claim against the City. If follows that Plaintiff also failed to plead claims against the City under Texas's wrongful death and survival statutes. Those claims are hereby **DISMISSED with prejudice.**

### B. Plaintiff fails to state a claim against Officer Phillips.

Plaintiff fails to state a claim against the Officer Phillips under § 1983 and the Fourth Amendment. Plaintiff thus also fails to state a claim against Officer Phillips under the state's wrongful death and survival statutes.

1. <u>Plaintiff fails to state a claim against Officer Phillips under § 1983 and the Fourth Amendment.</u>

As aforementioned, Plaintiff carries the burden to negate both prongs of the qualified immunity defense. *Waller*, 922 F.3d at 599. Plaintiff fails to do so.

During a detention or arrest, the right to be free from the use of excessive force is governed by the Fourth Amendment's "reasonableness" standard. *Graham*, 490 U.S. at 394. The reasonableness inquiry "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Therefore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. When deadly force is employed, the reasonableness inquiry is constrained and the use of deadly force violates the Fourth Amendment "unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Garza,* 943 F.3d at 745 (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018)).

11

Plaintiff cannot establish a violation of a constitutional right because the evidence indicates that the use of force was justified under the circumstances. While Fischer drove slowly throughout the incident, the totality of the circumstances demonstrates Fischer's unpredictability. Plaintiff's Complaint and the footage of the incident[3] show that police officers responded to a 9-1-1 call that reported a man slumped over in his car. The footage further illustrates that Fischer proceeded to evade arrest for minutes, that he told Officer Phillips he was going to do something that would lead to a poor outcome for the officers,[4] and that he pointed his tires in Officer Phillips's direction and drove towards him.

Based on those facts—which suggest that Officer Phillips was confronting an unpredictable man operating a vehicle under the influence—Officer Phillips had probable cause to conclude Fischer posed to them a serious threat of physical injury. In such circumstances, officers may use deadly force without violating the Fourth Amendment.

Because Plaintiff failed to defeat the first prong of the qualified immunity defense, Plaintiff fails to state a claim against Officer Phillips under § 1983 and the Fourth Amendment. As such, those claims are **DISMISSED with prejudice**.

2. <u>Plaintiff fails to state a claim against the City under the state's wrongful death and survival statutes.</u>

As aforementioned, to state a claim under the state's wrongful death or survival statutes, there must be a successful § 1983 claim. *See Rhyne*, 973 F.2d at 391. However, as stated above, Plaintiff fails to plead a violation of a constitutional right. If follows that Plaintiff also then fails to state a claim against Officer Phillips under the Texas's wrongful death and survival statutes. Those claims are likewise **DISMISSED with prejudice**.

---

[3]Including Officer Phillips's body camera, Officer Phillips's dash camera, and Officer Powell's dash camera.

[4]"This is not going to end well for you either. I got a lot of stuff going on now." Phillips BWC 2:21–2:24.

## CONCLUSION

For the reasons above, the Court **GRANTS** the City's Motion to Dismiss and Officer Phillip's Motion to Dismiss. Accordingly, all claims against Officer Phillips and the City are **DISMISSED with prejudice.**

**SO ORDERED** on this **30th day of October 2025.**

**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE